UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., an Indiana | ) | |
| Corporation and MARILYN MONROE, | ) | |
| LLC, a Delaware Limited Liability | ) | |
| Company, | ) | |
| Plaintiffs, | ) | |
| | ) | 1:05-cv-0415-RLY-TAB |
| vs. | ) | |
| | ) | |
| THE MILTON H. GREENE ARCHIVES, | ) | |
| LLC, an Oregon Limited Liability | ) | |
| Company, a/k/a M.H.G. Archives, Inc., an | ) | |
| Oregon Corporation, | ) | |
| Defendant. | ) | |

**ENTRY ON MOTION TO DISMISS COMPLAINT OR ALTERNATIVELY
TRANSFER VENUE**

Defendant The Milton H. Greene Archives, LLC (the "Archives") moves to

dismiss, or alternatively moves to transfer, the claims brought against it by the plaintiffs,

CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC (collectively "Plaintiffs").

The Archives contends the court lacks personal jurisdiction over it.  In the alternative, the

Archives contends the court should transfer this case to the Central District of California

where three other similar suits pend.  Plaintiffs assert that the court has personal

jurisdiction over the Archives and that this court is the proper forum to resolve the

parties' disputes.  For the reasons explained below, the court **DENIES** the Archives

motion to dismiss, and **GRANTS** the Archives' alternative motion to transfer.

1

I.      **Background**

Plaintiff CMG is an Indiana corporation with its principal place of business in

Hamilton County.  First Amended Complaint ("Am. Compl.") ¶ 1.  CMG also has a

physical presence in Los Angeles County, California, and conducts business there as well.

Declaration of Cristina Piquinela ("Piquinela Dec.") ¶ 7.  Plaintiff Marilyn Monroe LLC

is a Delaware corporation with its principal place of business in Indiana through CMG, its

exclusive licensing and business representative.  *Id*. ¶ 2.  Marilyn Monroe LLC is the

proprietor of various Intellectual Property rights, including certain trademarks,

copyrights, and the rights of association and sponsorship and Right of Publicity and

Privacy in and to the Marilyn Monroe name, image, and persona (hereinafter "Monroe

Intellectual Property rights").  *Id*. ¶ 7.

CMG originally secured the right to manage and exploit the Monroe Intellectual

Property rights ten (10) years ago.  *See* Declaration of Mark Roesler ("Roesler Dec.") ¶ 4.

Since then, CMG has been in the business of representing Marilyn Monroe LLC for the

purpose of licensing to third parties the permission to commercially utilize the Monroe

Intellectual Property rights.  Am. Compl. ¶ 3.  As part of its duties on behalf of Marilyn

Monroe LLC, CMG advertises, markets, and promotes the availability of Marilyn

Monroe, LLC for licensing on a worldwide basis.  *Id*. at ¶ 4.  The vast majority of all

business related to Marilyn Monroe LLC is conducted in Indianapolis, Indiana.  *See*

Piquinela Dec. ¶ 7.  All negotiations of licenses by CMG on behalf of Marilyn Monroe,

LLC, run through Indianapolis.  *Id*. at ¶ 8.

2

The Archives is an Oregon corporation with its principal place of business in Oregon.  Am. Compl. ¶ 8.  The Archives has within its possession certain original photographs of Marilyn Monroe taken by Milton H. Greene ("Monroe/Greene photographs"), to which it claims copyright.  *Id*. ¶¶ 9, 27.  Although the Archives is an Oregon corporation, it does a substantial amount of business in California.  Declaration of Joshua Greene ("Greene Dec.") ¶ 2.

Generally, when a manufacturer of collectible products or an advertising agency wishes to use the name, image, or persona of Marilyn Monroe on a product or in advertising and when it specifically wishes to use a Monroe/Greene photograph, that entity customarily secures a license from Plaintiffs in relation to the Monroe Intellectual Property rights and from the Archives in relation to the Archives' purported interests in the Monroe/Greene photographs.  *Id*. ¶ 10.  The Archives contacted CMG in Indiana in order to obtain a license for the production and sale of prints of the Monroe/Greene photographs.  *See* Piquinela Dec. ¶ 14.  However, there has never been a contractual relationship between the parties.  Greene Dec. ¶ 24.

In addition to this particular contact, the Archives maintains an interactive Internet website ("archivesmhg.com") which advertises and sells Marilyn Monroe photographs and other collectibles.  Plaintiffs' Ex. D-42.

On March 15, 2005, the Archives sent a letter to Anna Strasberg[1] of  Marilyn

---

[1]  The letter  was addressed to Anna  Strasberg of the Lee Strasberg Institute in New York and to The Lee Strasberg Institute in Los Angeles.  Plaintiffs' Ex. C.

Monroe, LLC, with copies to Mark Roesler and Cristina Piquinela of CMG.  The letter asserted that CMG had been impinging upon the Archives' ability to license its Monroe photographs, and that CMG's actions were "deceitful and in restraint of trade." Declaration of Surjit P. Soni ("Soni Dec."), Ex. H.  The Archives threatened legal action. *Id*.

In response, CMG filed the instant action against the Archives on March 22, 2005. *See* Complaint.  The Archives filed a Complaint against CMG and Marilyn Monroe, LLC, on March 25, 2005, in the Central District of California.  Soni Dec. ¶ 4, Ex. C.

## II.    Motion to Dismiss

### A.    Jurisdictional Standard

The Archives has moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2).  When a defendant challenges jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists.  *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000).  In deciding the motion to dismiss, the court may receive and consider affidavits from both parties.  *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F.Supp.2d 918, 922 (N.D.Ill. 2002) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987)).  The court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual disputes regarding relevant facts in the plaintiff's favor.  *Purdue Research Found. v. Sanofi-Synthlelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *John Walker and Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399,

402 (7th Cir. 1987).

The determination of personal jurisdiction requires a two-step inquiry: (1) whether the defendant falls within Indiana's long-arm statute; and (2) whether the exercise of jurisdiction over the defendant comports with the requirements of federal due process. *Purdue Research Found.*, 338 F.3d at 779.

However, Indiana's long-arm statute has recently "been expanded to the full extent of the law," as it now provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." *Richards and O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n. 6 (Ind. Ct. App. 2002); Ind. Trial  R. 4.4(A).  Accordingly, "the first prong of the inquiry collapses into the second prong, and the only issue is whether the exercise of jurisdiction over [the defendant] comports with federal due process." *Litmer v. PDQUSA.com*, 326 F.Supp.2d 952, 955 (N.D. Ind. 2004).

The Due Process Clause requires that a defendant not present within the territory of the forum have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In addition, such "minimum contacts" with the forum state must be purposeful and create a "substantial connection" with the forum state.  *See Burger King Corp. v. Rudkewicz*, 471 U.S. 462, 474 (1985).

Specific jurisdiction exists when the litigation arises out of the defendant's

contacts with the forum.[2]  Specific jurisdiction comports with the Due Process Clause where the defendant's contacts with the forum are such that the defendant "should reasonably anticipate being haled into court in that state "because the defendant has 'purposefully availed itself of the privilege of conducting activities' there."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (citing *Burger King*, 471 U.S. 474-75).  Thus, random, fortuitous or attenuated contacts will not suffice to support a finding of specific personal jurisdiction.  *Burger King*, 471 U.S. at 475.

## B.    Discussion

Plaintiffs contend the court has specific personal jurisdiction over the Archives pursuant to the "effects test" for specific personal jurisdiction first enunciated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984); *see also Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd.*, 34 F.3d 410, 411-12 (7th Cir. 1994).  These cases stand for the proposition that the state in which the alleged injury occurred (and thus the tort) is the state in which the defendant should be amenable to suit.

In this case, Plaintiffs argue that the Archives has engaged in tortious conduct causing harm to CMG in Indiana.  First, the Archives has violated Plaintiffs' rights of publicity and copyrights by selling (without permission) Marilyn Monroe products, including those on its interactive website.  Plaintiffs' Exs. D-1 to D-41.  Second, the Archives has defamed CMG by sending a letter to Ms. Strasberg of Marilyn Monroe,

---

[2] Plaintiffs do not argue that the court has general jurisdiction over the Archives.

LLC, claiming that CMG has engaged in conduct that was "deceitful" and that it engaged in a "restraint of trade."  Plaintiffs' Ex. C.  Third, the Archives has interfered with the prospective business advantage of CMG by licensing the rights to certain Marilyn Monroe images to a third party without the authorization or permission of CMG.  Am. Compl. ¶¶ 53-63.

The Archives responds that even under the *Calder* "effects test," CMG must establish that the Archives has some purposeful contacts with Indiana before the court may assert personal jurisdiction over it.  *See Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122 (U.S. 1986) (The Court held that the Supreme Court's decision in *Calder, supra.* did not displace the minimum contacts analysis: "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State.").

Under either *Janmark* or *Wallace*, the court finds that the Archives' contacts with Indiana are sufficient to comport with traditional notions of fair play and substantial justice.  Taking the allegations of Plaintiffs' Amended Complaint as true, the Archives, through its unauthorized licensing of Marilyn Monroe products, has caused CMG, an Indiana corporation, harm.  Further, the Archives maintains an interactive website, through which it solicits customers, including Indiana customers, to enter into contracts with the Archives for the purchase and delivery of infringing products directly to Indiana. Plaintiffs' Exs. D-1 to D-42.  Finally, the Archives has had prior business dealings with CMG, and, on one occasion, obtained a license from CMG in order to produce and sell

prints of Marilyn Monroe.  Plaintiffs' Ex. A, ¶ 6; Plaintiffs' Ex. B at ¶¶ 13-14.

Accordingly, the court **DENIES** the Archives' motion to dismiss for lack of personal

jurisdiction.

The court now turns to the Archives' alternative motion to transfer venue to the

Central District of California pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been

brought."  28 U.S.C. § 1404(a).  Transfer under § 1404(a) is appropriate where the

moving party establishes that "(1) venue is proper in the transferor district, (2) venue and

jurisdiction are proper in the transferee district, and (3) the transfer will serve the

convenience of the parties, the convenience of the witnesses, and the interest of justice."

*State Farm Mutual Auto Ins. Co. v. Bussell*, 939 F.Supp. 646, 650 (S.D.Ind. 1996).  The

determination as to whether a case should be transferred is committed to the sound

discretion of the trial court.  *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286,

1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

Section 1404(a) does not indicate the relative weight to be accorded to each factor.

Instead, the district court has discretion to "adjudicate motions for transfer according to

an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622

(1964)).  To this end, the court must balance the three factors in light of the particular

circumstances of each case.  *See Coffey*, 796 F.2d at 219-20 n.3 (7th Cir. 1986).

8

The Archives briefly argues that venue is improper in the Southern District of Indiana.  However, the allegations of Plaintiffs' Amended Complaint allege injury to CMG, an Indiana corporation.  Therefore, the court finds that venue is proper in either the Southern District of Indiana or the Central District of California.

### 1.     Convenience of the Parties and Witnesses

In evaluating the convenience and fairness of transfer under § 1404(a), the court must consider the private interests of the parties.  These include: "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, (4) convenience to the parties – specifically, their respective residences and abilities to bear the expense of trial in a particular forum."  *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill. 1995).

Generally, a plaintiff's choice of forum should be given due weight.  However, in this case, only CMG is an Indiana resident.  CMG has an office in the Central District of California, and Marilyn Monroe, LLC, has no real physical premises other than that of its agent, CMG.  Since CMG has an office in the Central District of California, neither CMG nor Marilyn Monroe, LLC, will be inconvenienced by litigating there.

In addition, although the Archives is an Oregon corporation with its principal place of business in Florence, Oregon, the Archives has done a great deal of business in California, and in the Los Angeles area in particular. Greene Dec. ¶ 2.

Moreover, the availability of evidence weighs in favor of California.  Plaintiffs' records are located on a computer hard drive, which can easily be electronically transmitted from Indiana to Los Angeles.  The Archives' evidence will likely come from Warner Bros. Studios and 20th Century Fox Studios, both of which are located in California.

Finally, the Plaintiffs have identified only one entity, Playing Mantis, who resides in Indiana. Declaration of Jonathan Faber ¶ 6.  However, the majority of the Archives' witnesses reside in California.  *See* Supplemental Declaration of Joshua Greene, ¶ 2.

### 2.    Interest of Justice

The interest of justice factor "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Espino v. Top Draw Freight Sys., Inc*., 713 F.Supp. 1243, 1245 (N.D.Ill. 1989).  Interest of justice considerations include the necessity to apply state law, the conservation of judicial resources and the likelihood of an earlier trial.  *See id.*  Another factor to consider is whether the case in the transferee court can be consolidated with a case in the transferor court.  *Coffey*, 796 F.2d at 221 ("...related litigation should be transferred to a forum where consolidation is feasible. . .").

Transfer of this case will promote the efficient administration of the court system. The California court has already consolidated several cases related to Plaintiffs' rights. Having a single court decide all of the issues related to the Archives and the Marilyn Monroe property rights is clearly more efficient than having two separate litigations.

10

Although this court is more familiar with Indiana law, the Archives intends to assert

claims against Plaintiffs under California law.  Thus, this factor is at best, neutral.  In

sum, the court finds the interests of justice weigh in favor of the California forum because

all of the rights of the parties can be litigated there at home, thereby promoting the

efficient administration of justice and the reduction of party expenses.

## III.   Conclusion

For the reasons discussed herein, the court **DENIES** the Defendant's Motion to

Dismiss, but **GRANTS** the Defendant's Alternative Motion to Transfer Venue.  The

Clerk of the Court shall transfer this cause to the Central District of California.


**SO ORDERED** this  6th   day of September 2005.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

11

Electronic Copies to:

Daniel P. Byron
BINGHAM MCHALE
dbyron@binghammchale.com

James Braden Chapman II
DANN PECAR NEWMAN & KLEIMAN
jchapman@dannpecar.com

Eric M. Hylton
DANN PECAR NEWMAN & KLEIMAN
ehylton@dannpecar.com

Leo E. Lundberg,  Jr.
THE SONI LAW FIRM
leo@sonilaw.com

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com

Jonathan G. Polak
DANN PECAR NEWMAN & KLEIMAN
jpolak@dannpecar.com

M. Danton Richardson
THE SONI LAW FIRM
danton@sonilaw.com

Rafael A. Sanchez
BINGHAM MCHALE
rsanchez@binghammchale.com

Surjit P. Soni
THE SONI LAW FIRM
surj@sonilaw.com

Amy L. Wright
DANN PECAR NEWMAN & KLEIMAN
awright@dannpecar.com